767 F.2d 153
 Paulette STEWART, Plaintiff-Appellee,
v.
LUBBOCK COUNTY, TEXAS, et al., Defendants-Appellants.
Barbara WILKERSON, on behalf of herself and all others
similarly situated, Plaintiffs-Appellees,
v.
LUBBOCK COUNTY, TEXAS and Delwin Lee (Sonny) Keesee,
individually and in his capacity as Sheriff of
Lubbock County, Tx., et al.,
Defendants-Appellants.
 Nos. 84-1199, 84-1331 and 84-1406.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 5, 1985.
 
 Jim Bob Darnell, Crim. Dist. Atty., Kay P. Fletcher, Asst. Crim. Dist. Atty., Cecil Kuhne, Lubbock, Tex., for defendants-appellants.
 Marvin Rogers, Mark C. Hall, Lubbock, Tex., for plaintiff-appellee.
 Marvin Rogers, West Texas Legal Services, Nathan Hult, Mark C. Hall, Lubbock, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before JOHNSON, HILL, Circuit Judges, and HINOJOSA*, District Judge.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 Lubbock County, Texas, and officials of the Sheriff's Department, defendants, in these two consolidated cases on appeal allege legal error in the district court's ruling that the County's strip search policy was unconstitutional. In the Stewart case, defendants also allege that the district court abused its discretion in refusing to set aside a default judgment for attorney's fees. We agree with the district court's ruling that the strip search policy was unconstitutional and affirm the judgments in both cases. We also affirm the award of attorney's fees in the Stewart case.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 The policy at the Lubbock County jail prior to the issuance of temporary and permanent injunctions by the district court permitted a strip search of any arrestee. The searches did not depend upon the severity of the charge. Thus, all citizens arrested for misdemeanors punishable by fine only (Class C) were strip searched at the Lubbock County jail pursuant to jail policy. Furthermore, there was no requirement that the arrestee be suspected of possessing weapons or contraband for a strip search to be conducted. These searches, approximately 1000 per month, were conducted before arraignment and before the arrestee had an opportunity to arrange for bail. Thus, persons such as the plaintiffs, Paulette Stewart and Barbara Wilkerson, were subject to strip searches upon arrest for misdemeanors punishable only by fine.[1]
 
 
 3
 Both plaintiffs sued Lubbock County and county officials in federal district court.[2] In addition to receiving damages, the plaintiffs sought to enjoin the strip search policy in effect. A permanent injunction was issued by the district court in the Stewart case.
 
 
 4
 Two questions are presented on appeal:[3] whether the district court erred in holding the strip search policy of the Lubbock County Sheriff's Department unconstitutional as a matter of law; and whether the district court abused its discretion in refusing to set aside a default judgment for attorney's fees against Lubbock County.
 
 ANALYSIS
 
 5
 I. Constitutionality of the Strip Search Policy
 
 
 6
 Plaintiffs urge that the strip search policy of the defendants is violative of the Fourth Amendment.[4] The Seventh Circuit has provided guidance for the balancing of interests in determining the constitutionality of strip searches under the Fourth Amendment. See Mary Beth G. v. City of Chicago, 723 F.2d 1263 (7th Cir.1983). In Mary Beth G. a challenge was made to the strip search policies of the city of Chicago. In finding the policies to be unconstitutional, the court both relied on and distinguished Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). It relied on Wolfish for the standard of determining "reasonableness" of searches:
 
 
 7
 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
 
 
 8
 723 F.2d at 1271 (citing Wolfish, 441 U.S. at 559, 99 S.Ct. at 1884). It also distinguished the holding of Wolfish that strip searches may be conducted with less than probable cause by specifying that pre-trial detainees in Wolfish "were awaiting trial on serious federal charges after having failed to make bond and were being searched after contact visits." 723 F.2d at 1272. The court in Mary Beth G. found that the city of Chicago's need for strip searching "minor offenders who were not inherently dangerous and who were being detained only briefly while awaiting bond ... when there was no reason to believe they were hiding weapons or contraband on their persons" did not outweigh the personal privacy interest of the detainees. 723 F.2d at 1272. It found the strip searches unreasonable without a reasonable suspicion by the authorities that either weapons or contraband might be concealed on the bodies of the detainees. Id. at 1273.
 
 
 9
 The Fourth Circuit has also applied and distinguished Wolfish in the case of an arrestee facing a charge of driving while intoxicated who was strip searched without any reasonable suspicion that she might be in possession of either a weapon or contraband. See Logan v. Shealy, 660 F.2d 1007 (4th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). The court pointed out that although Logan's offense was "not a minor traffic offense, [it] was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband...." Id. at 1013. It also considered relevant to its conclusion of the unconstitutionality of the strip search policy that "there was no cause in [Logan's] specific case to believe that she might possess either [weapons or contraband]." Id.
 
 
 10
 In the cases sub judice, similarly to Mary Beth G., the detainees were arrestees awaiting bond on misdemeanor or traffic violation charges. Lubbock County argues that the strip search policy of the Chicago Police Department which it admits was similar to its own was unreasonable because it was enforced only against female arrestees. While the Seventh Circuit held that such disparity in treatment did violate the equal protection clause of the Fourteenth Amendment, that violation was clearly stated to be an "additional ground" for finding the strip search policy unconstitutional. Mary Beth G., 723 F.2d at 1274. Lubbock County's argument that Mary Beth G. is inapplicable to the present cases is entirely without merit.
 
 
 11
 Because Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, under the balancing test of Wolfish we find such searches unreasonable and the policy to be in violation of the Fourth Amendment.
 
 II. Attorney's Fees
 
 12
 Lubbock County argues in the Stewart case that the district court abused its discretion by not setting aside a default judgment for attorney's fees under 42 U.S.C. Sec. 1988.[5] The court had received an application for an award of attorney's fees on March 9, 1984. Under Local Rule of Practice 5.1(e) defendants had 20 days to respond to the motion.[6] Further, the court entered an order 3 days later, on March 12, stating that any opposing briefs shall be filed within 20 days of the order. On April 4, after the deadline in the order, the court granted Stewart's application for attorney's fees. Thereafter, defendants filed a motion to vacate judgment. It is the denial of this motion that defendants now appeal.
 
 
 13
 The standard for review is whether the district court abused its discretion. See, e.g., Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir.1969). The district court, in its order granting attorney's fees in the amount requested, noted that defendants had not responded in any way to the court's earlier order setting the time for their response, and it concluded that the defendants therefore agreed that Stewart's request was reasonable as to the number of hours expended and to the per hour fee requested. The district court applied the standards of Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and considered the factors specified in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974). The court found that the hours expended and the hourly rate were reasonable. Further, relying on Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) it found that the defendants, having failed to submit any evidence, had waived their right to an evidentiary hearing.
 
 
 14
 In their motion to vacate judgment, defendants asserted that they had been unable to find a copy of the March 12 briefing order in any of their files, and requested relief for "mistake, inadvertence, ... or excusable neglect" under Fed.R.Civ.P. 60(b)(1). The district court, relying on the requirement of Local Rule of Practice 5.1(e) that a response be filed within 20 days of the filing of a motion, denied defendants' motion to vacate judgment. Thus, defendants' reliance on their inability to find the March 12 order informing them of the 20 day requirement is misplaced: the order was merely a reminder of the response requirement contained in the local rules (although it extended the 20 day period to respond by starting it from the date of the order).
 
 
 15
 We find no abuse of discretion in the district court's failure to set aside the award of attorney's fees and to grant an evidentiary hearing on the issue of the reasonableness of amount of the award of such fees. The award of attorney's fees in the Stewart case is affirmed.
 
 
 16
 AFFIRMED.
 
 
 17
 HINOJOSA, District Judge, concurring in part and dissenting in part:
 
 
 18
 I concur with Judge Hill's opinion on the constitutionality of the strip search policy of the Lubbock County Sheriff's Department with respect to these particular Plaintiffs' claims for damages[1] and on the propriety of the district court's entry of default judgment for attorney's fees. I dissent in part, however, because I conclude that this Court, based on lack of federal jurisdiction, should have reversed the district court's judgment granting the Plaintiffs' claims for injunctive relief.
 
 
 19
 In this Court's opinion the majority conclude that "[t]he injunction issued by the district court is not before us on appeal." Supra at note 3. The majority note that if the injunction was before this panel on appeal, they would have raised sua sponte the issue of the Plaintiffs' standing to seek injunctive relief. Id. In my opinion this issue, which goes to the article III threshhold requirement for federal court jurisdiction, City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983), is sufficiently before this Court on appeal.
 
 
 20
 Lubbock County's brief stated the substantive issue on appeal for both of these consolidated cases as follows: "The Court erred in ruling, as a matter of law, that the strip search policy of the Lubbock County Sheriff's Department was unconstitutional."[2] This ruling was first made by the district court in its order entering a temporary injunction against Lubbock County in Plaintiff Barbara Wilkerson's case. After a jury refused to award damages to Plaintiff Paulette Stewart, the Court issued a memorandum in which it reaffirmed its ruling in issuing the temporary injunction in Wilkerson's case that the county's strip search policy was unconstitutional. In accordance with this memorandum, the district court entered judgment against Lubbock County in Stewart's case. The district court's judgment awarded Stewart one dollar in damages and ordered a permanent injunction. The judgment entered by the court in Wilkerson's case awarded a total of $15,000 in damages as found by a jury and adopted the permanent injunction entered in Stewart's case.
 
 
 21
 Since the district court made its ruling that Lubbock County's strip search policy was unconstitutional in its order issuing the temporary injunction, which later was made permanent in both cases, it is particularly difficult for me to understand how the jurisdictional issue of the Plaintiffs standing to seek injunctive relief is not before us. It is, of course, a familiar rule of appellate review that jurisdictional issues, particularly the article III case or controversy requirement, should be examined on appeal even if not raised by the parties or the court below. See Juidice v. Vail, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977); McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 16, 83 S.Ct. 671, 674, 9 L.Ed.2d 547 (1963); Save the Bay, Inc. v. United States Army, 639 F.2d 1100, 1102 (5th Cir.1981); United States v. Rochelle, 363 F.2d 225, 230 (5th Cir.1966). This practice was recently followed by another Fifth Circuit panel who raised sua sponte the same standing issue in an analogous factual context. Brown v. Edwards, 721 F.2d 1442, 1446 (5th Cir.1984).
 
 
 22
 In this appeal the majority recognize that jurisdictional issues should be considered sua sponte by an appellate court. They have concluded, however, that the injunction is not before us. Apparently the majority would have considered the Plaintiffs' standing to seek injunctive relief if the county had challenged the injunction on other grounds (for example, because it was overly broad), but will not consider the standing issue when, as here, the county has challenged the district court's ruling that directly led to the issuance of the injunction. It seems to me that this distinction, which appears to be based on how far off the party misses the jurisdictional issue, likewise misses the point.
 
 
 23
 The rationale for requiring a federal court to examine jurisdictional issues not raised by the parties is that "[f]ederal courts are courts of limited jurisdiction" and may not proceed without congressionally or constitutionally conferred jurisdiction. Save the Bay, Inc. v. United States Army, 639 F.2d at 1102. As developed more fully below, in these cases the district court was without jurisdiction to consider the Plaintiffs' claims for injunctive relief, and, therefore, this Court should raise the standing issue sua sponte.
 
 
 24
 In accordance with principles recently articulated by the Supreme Court in City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), I conclude that Plaintiffs' claims for injunctive relief do not satisfy the article III case or controversy requirement. See also Brown v. Edwards, 721 F.2d at 1446-47. These issues were not present in the Seventh Circuit's decision in Mary Beth G. v. City of Chicago since apparently the "parties ... entered into an agreement and stipulation in settlement of the plaintiff's claims for injunctive relief." 723 F.2d 1263, 1266 (7th Cir.1983).
 
 
 25
 In Lyons the Supreme Court stated that "[p]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." 103 S.Ct. at 1666. Thus, in order to show that Lubbock County's strip search policy would be unconstitutionally applied to injure the Plaintiffs in the future, and thereby establish an actual controversy with respect to injunctive relief, Plaintiffs would have had to allege the following: (1) that Plaintiffs would have another encounter with the police, (2) that this encounter would result in an arrest for a traffic or minor offense, and (3) that Plaintiffs would be brought to the booking area of the county jail and strip searched under conditions in which there was no constitutionally permissible basis for such a search. See id. at 1667-1669; see also O'Shea v. Littleton, 414 U.S. 488, 496-98, 94 S.Ct. 669, 676-77, 38 L.Ed.2d 674 (1974).
 
 
 26
 While Lubbock County's clear strip search policy may make these closer cases than that in Lyons, "in any event, to have a case or controversy with the [county] that could sustain [the claims for injunctive relief], [Plaintiffs] would have to credibly allege that [they] faced a realistic threat from the future application of the [county's] policy." City of Los Angeles v. Lyons, 103 S.Ct. at 1668 n. 7 (emphasis added). Even assuming Plaintiffs had made these allegations, anticipating whether these Plaintiffs would be arrested for a violation of the law and subsequently strip searched at the county jail "takes us into the area of speculation and conjecture." See O'Shea v. Littleton, 414 U.S. at 498, 94 S.Ct. at 677.
 
 
 27
 Moreover, here the Plaintiffs have not even made the above allegations. Both Plaintiffs made virtually identical allegations supporting their claims for injunctive relief. Plaintiff Wilkerson's complaint alleged that she "may suffer irrevocable injury, loss, and harm and the accompanying humiliation, degregation [sic], and emotional stress if she is again subject to an arrest and strip search as she has been on the occasion as alleged above" (emphasis added).
 
 
 28
 In Brown v. Edwards, 721 F.2d 1442 (5th Cir.1984), the Plaintiff had been arrested and subsequently brought a section 1983 action challenging the constitutionality of the Mississippi fee system for constables. In holding that Brown lacked standing to seek equitable relief, this Court noted that "Brown's complaint does not allege, and nothing in the record suggests, that Brown is in any way likely, or more likely than any other Mississippian to be again subjected to arrest or charging by any Mississippi constable." Id. at 1446. Likewise, here there is nothing to suggest that these Plaintiffs are any more likely than any other citizen of Lubbock County to again be arrested and strip searched. In my opinion, the Plaintiffs' claims for injunctive relief clearly do not allege an actual case or controversy as required by Article III of the Constitution.[3]
 
 
 29
 The Ninth Circuit has taken the position that if a plaintiff has standing to bring an action for damages, the plaintiff also has standing to assert a claim for injunctive relief. Giles v. Ackerman, 746 F.2d 614, 619 (9th Cir.1984). The Ninth Circuit reached this conclusion after observing that in Lyons the damages claim had been severed from the claim for injunctive relief by the time the case reached the Supreme Court. Id.; see City of Los Angeles v. Lyons, 103 S.Ct. at 1667 n. 6.
 
 
 30
 While the Ninth Circuit's position is an understandable attempt to mitigate the arguably severe case or controversy rule dictated by Lyons, I doubt that this approach squares with the Supreme Court's holdings in this area. In Lyons the original complaint sought damages in counts I through IV and injunctive relief in count V. While the Supreme Court noted that the parties agreed to sever the damage and injunctive claims after the case's first appeal, the court broadly held that "[u]nder O'Shea and Rizzo, these allegations [that Lyons would again be injured by application of the City's choke hold policy] were an insufficient basis to provide a federal court with jurisdiction to entertain count V of the complaint." City of Los Angeles v. Lyons, 103 S.Ct. at 1668. This holding leads me to believe that the Court would have reached the same conclusion on the claim for injunctive relief even if the damages claim had not been severed.
 
 
 31
 In addition, the Ninth Circuit's approach is inconsistent with this Circuit's application of Lyons in Brown v. Edwards, 721 F.2d at 1446-47. In Brown this Court applied Lyons and held that the plaintiff lacked standing to seek injunctive relief in a case in which the damages claim was not severed from the claim for equitable relief. The Supreme Court's answer to the effect of withholding injunctive relief was that the plaintiff, as is the case here, had a remedy for damages under section 1983 which would, along with possible federal criminal civil rights sanctions, deter future violations of the important rights at issue. City of Los Angeles v. Lyons, 103 S.Ct. at 1671.
 
 
 32
 In sum, I conclude that we should have raised sua sponte the issue of the Plaintiffs' standing to seek injunctive relief and that the claims for injunctive relief should have been dismissed for lack of federal jurisdiction.[4]
 
 
 
 *
 District Judge of the Southern District of Texas, sitting by designation
 
 
 [1]
 Paulette Stewart had been arrested for public intoxication and Barbara Wilkerson had been arrested on an outstanding warrant for issuing a bad check after a routine traffic stop
 
 
 [2]
 Stewart sued for damages under 42 U.S.C. Sec. 1983 for injuries received in a scuffle during her strip search and was awarded $1 in nominal damages. Wilkerson also sued for damages under Sec. 1983 for her strip search and was awarded $15,000 in damages
 
 
 [3]
 The injunction issued by the district court is not before us on appeal. Accordingly, we do not determine whether injunctive relief was appropriate in this case, nor do we reach the merits of the injunction. We note, however, that in light of City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), we would raise sua sponte the question of plaintiffs' standing to seek injunctive relief were the injunction before us on appeal. See Brown v. Edwards, 721 F.2d 1442, 1446 (5th Cir.1984). Plaintiffs may not be able to show that they would again be arrested and therefore be again subject to the unconstitutional strip search policy of the Lubbock County Sheriff's Department. See Lyons, 461 U.S. at 102, 103 S.Ct. at 1665; Brown, 721 F.2d at 1447. But see Giles v. Ackerman, 746 F.2d 614, 619 (9th Cir.1984) (plaintiff with standing to bring damages action has standing to obtain injunctive relief in addition to damages). Cf. Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1266 (7th Cir.1983) (class action; injunction by agreement and stipulation). In the present case, on appeal appellants pray only that the trial court's ruling of law that the strip search policy is unconstitutional and that Wilkerson's $15,000 damage award be reversed. No relief from the permanent injunction is sought
 The dissent would consider the injunction which is not before us on appeal and dismiss it on jurisdictional grounds (J. Hinojosa, dissenting). The dissent argues primarily that we may consider the injunction because we may and indeed must raise jurisdictional issues sua sponte. We agree completely that this Court could and should raise sua sponte any questions concerning jurisdiction in matters properly before this Court. However, we find that only the judgments regarding damages are before us on appeal and that the permanent injunction which the dissent would dismiss is not part of this appeal.
 The cases cited by the dissent in support of the proposition that we should raise the issue of jurisdiction sua sponte even if not raised by the parties involved injunctions and other matters actually before the appellate court. See Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (Supreme Court sua sponte raised standing of some class members released from jail after contempt proceedings to seek injunctive relief; finding that other class members had standing, the Supreme Court reached the merits concerning the applicability of Younger principles); McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963) (Supreme Court noted that it may reexamine jurisdiction of the district court to enjoin an order of the National Labor Relations Board although not raised by the parties); Brown, 721 F.2d at 1446 (this Court considered sua sponte Brown's standing to seek equitable relief in appeal of dismissal of section 1983 action for damages and injunctive relief); Save the Bay, Inc. v. United States Army, 639 F.2d 1100 (5th Cir.1981) (this Court in the appeal of an order in part granting injunctive relief considered sua sponte whether the order was appealable); United States v. Rochelle, 363 F.2d 225 (5th Cir.1966) (this Court sua sponte raised question of the jurisdiction of the district court in a suit involving bankruptcy and income tax). These cases require only that the jurisdiction of this Court or a district court over matters before this Court be raised by us even when the parties did not raise it and the district court did not consider it. In fact, in Brown, this Court considered jurisdiction separately for the damage claims and injunctive relief, although in Giles, the Ninth Circuit found that jurisdiction over damage claims would also sustain jurisdiction over any additional (injunctive or declaratory) relief sought.
 We observe, further, that were we to reach the merits as to the injunction, we would vacate section F of the injunction and remand to the district court for a revision of the injunction to clearly permit misdemeanor and traffic violation arrestees to be strip searched even while awaiting bond if reasonably suspected of possessing weapons or contraband.
 
 
 [4]
 The right of the people to be secure in their persons, homes, papers and effects; against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized
 U.S. Const. amend. IV.
 
 
 [5]
 Section 1988 provides in part:
 In any action or proceeding to enforce a provision or section [ ] ... 1983 ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of costs.
 
 
 [6]
 This rule provides:
 Any response to a motion shall be filed within 20 days from the date of filing of the motion.
 
 
 [1]
 The majority holds that "[b]ecause Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, under the balancing test of Wolfish we find such searches unreasonable." Supra at slip op. p. 5896, 767 F.2d at p. 156. I do not understand this holding to limit the "reasonableness" test as articulated in Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), to only situations in which suspicion exists that the arrestee possesses weapons or contraband. Each case must be considered in light of all the circumstances surrounding the particular search. Id. For example, I have no doubt that it is not unreasonable to strip search minor offenders when, due to overcrowding, they must be placed temporarily with the more serious offenders. A provision to this effect was made a part of the permanent injunction issued by the district court in these cases
 I also note that, under the Wolfish balancing test, normally a factual inquiry would need to be made to determine if, in light of the particular circumstances, a search is reasonable. The district court in these cases appears to have ruled in issuing the injunction that the county's strip search policy was unconstitutional on its face. I have concluded that the court lacked jurisdiction to issue this injunction. See infra. The same article III standing defect that deprived the district court of jurisdiction to consider the Plaintiffs' claims for injunctive relief also barred any declaratory relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983) (citing Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)); Brown v. Edwards, 721 F.2d 1442, 1447 (5th Cir.1984). In addition, other than in the context of the first amendment, it is usually improper to consider statutory or policy applications to third parties not before the court. See United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). Even assuming that the district court could have declared the policy unconstitutional, the Plaintiffs in these cases would still have to prove that their constitutional rights were violated. See id.; New York v. Ferber, 458 U.S. 747, 767-68, 102 S.Ct. 3348, 3359-61, 73 L.Ed.2d 1113 (1982). Despite this, the district court instructed the jury in both cases that the county had violated the Plaintiff's constitutional rights and that the only issue was the amount of damages. Normally a factual inquiry would be necessary before deciding this constitutional question. Here, however, the record reveals that the Defendants have virtually stipulated that no special circumstances existed which required a strip search of these minor offenders. Further, the Defendants have not raised this issue on appeal. Therefore, I concur in the majority's holding only to the extent that it declares that the county's strip search policy violated the constitutional rights of these particular Plaintiffs and would affirm the damages awarded to them.
 
 
 [2]
 The majority "find[s] that only the judgments regarding damages are before us on appeal." Supra at note 3. As can be seen from the district court's rulings relating to the constitutionality of the County's strip search policy, a summary of which is set forth in the text that follows, there are no separate "judgments regarding damages," and, in my opinion, the damages award and the injunction are intertwined with the district court's ruling on the constitutional question
 I also note that in its briefs the County has not contested the propriety of a damages award or the amount of the damages awarded, given the district court's ruling on the constitutional question. Instead, the County has raised the issue of the court's legal ruling that directly resulted in both the issuance of the injunction and the award of damages.
 
 
 [3]
 Plaintiff Wilkerson's suit was originally brought as a class action. The existence of a certified class would change the above analysis somewhat, although my view is that the result would be the same since Wilkerson, as class representative, would still be required to have standing. See O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The record reveals, however, that the class was never certified
 
 
 [4]
 Other than the jurisdictional question that we should raise sua sponte and find dispositive in these cases, I would have two additional concerns regarding the injunction. First, even if the Plaintiffs had article III standing to assert their claims for injunctive relief, they, in all likelihood, could not demonstrate the irreparable harm that is a prerequisite to equitable relief. See City of Los Angeles v. Lyons, 103 S.Ct. at 1670-71. Second, I question whether the injunction, which permanently designates (absent application to federal court) particular sections of the county jailhouse for particular purposes and permanently mandates a particular processing procedure for arrestees, is overly intrusive to the point that federalism concerns are raised. See Rizzo v. Goode, 423 U.S. 362, 379-80, 96 S.Ct. 598, 608-09, 46 L.Ed.2d 561 (1976); Ruiz v. Estelle, 679 F.2d 1115, 1144-45 (5th Cir.1982)