Barbra Burg KIDD

v.

Chief Paul GOWEN, individually and in his capacity as Chief of the Durham Police Department; Sgt. Joseph Morganella, Sgt. Thomas Stinglen, and Officer Kevin Walsh, individually and in their capacities as Police Officers for the Town of Durham; Robert LeClair, Superintendent, Strafford County House of Correction, in his official capacity; Sgt. Warren F. Dowaliby, Correctional Officer Ann Gagne, Sgt. Frederic Fogarty, individually and in their capacities as Correctional Officers for the County of Strafford; County of Strafford, New Hampshire.

Civil No. 90–482–SD.

United States District Court,
D. New Hampshire.

Aug. 24, 1993.

James P. Loring, Portsmouth, NH, for plaintiff.

Theodore Wadleigh, Manchester, NH, for defendants County, Fogarty, Gagne, Dowaliby, LeClair.

James G. Walker, Manchester, NH, for defendants Gowen, Morganella, Stinglen.

### ORDER

DEVINE, Senior District Judge.

Plaintiff Barbra Burg Kidd brings this action pursuant to 42 U.S.C. § 1983 [1] and New Hampshire law alleging, inter alia, that a strip search of plaintiff conducted pursuant to Strafford County House of Correction (SCHC) policy [2] violated the Fourth Amendment.[3] The court's jurisdiction over plain-

---

1. In relevant part, 42 U.S.C. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Strafford County Department of Corrections Directive No. C–103(C)(1) provides that "[t]he Intake Officer will conduct a complete Strip Search of prisoners being received before leaving

the Intake Area to ensure that the prisoner does not have contraband in his/her possession when entering the facility." A "Strip Search" is defined as "[a] search of an inmate which requires that all clothing is removed during the search." Directive No. D–220.

3. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Art. IV.

tiff's federal claims is proper under 28 U.S.C. §§ 1331 and 1343 (Supp.1993).

Presently before the court is plaintiff's motion for partial summary judgment against defendant Strafford County and defendants' objection thereto.

### 1. Background

On October 22, 1988, Barbra Burg Kidd was taken into protective custody pursuant to New Hampshire Revised Statutes Annotated (RSA) 172–B, based on a determination that she was intoxicated,[4] and she was delivered to SCHC. Upon her arrival, Kidd was taken by Correctional Officer Anne Gagne to a jail cell identified as cell no. H–5, which is located in a holding area.

The search of Kidd consisted of her removing all of her clothes, lifting her arms to expose her armpits, exposing the soles of her feet and the palms of her hands, and shaking out her hair. Kidd was not required to bend or squat to expose her body cavities to any visual search. No manual body cavity search was conducted. Other than being assisted in the removal of a barrette, Kidd was not touched during the search.

Defendants concede that the officers searching plaintiff "had no specific suspicion that she may [have been] carrying a weapon or other contraband. The officers conducting the search did so because the search was required by the rules and regulations of the institution and was authorized under the New Hampshire Statutes." Defendants' Objection Memo at 4.

### 2. Discussion

#### a. Summary Judgment Standard

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

4. RSA 172–B:3 I provides,

> When a peace officer encounters a person who, in the judgment of the officer, is intoxicated as defined in RSA 172–B:1, X, the officer may take such person into protective custody and shall take whichever of the following actions is, in the judgment of the officer, the most

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R.Civ.P.

#### b. Liability of Strafford County under § 1983

The Supreme Court has held that "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)). "[T]he entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). It is undisputed that the strip search at issue was conducted pursuant to Strafford County policy.

#### c. The Reasonableness Standard

The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order ' "to safeguard the privacy and security of individuals against arbitrary invasions...." ' *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 [98 S.Ct. 1816, 1820, 56 L.Ed.2d 305] (1978), quoting *Camara v. Municipal Court*, 387 U.S. 523, 528 [87 S.Ct. 1727, 1731, 18 L.Ed.2d 930] (1967). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, *the reasonableness standard usually requires, at a minimum, that the facts upon which*

> appropriate to ensure the safety and welfare of the public, the individual, or both:
>
> ....
>
> (c) Lodge the person in a local jail or county correctional facility for said person's protection for up to 24 hours or until the keeper of said jail or facility judges the person to be no longer intoxicated.

*an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test.*[5]

*Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979) (footnotes omitted) (emphasis added).

Similarly, in determining the reasonableness of a strip search conducted at a correctional facility, the Supreme Court has stated,

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979).

Although the First Circuit has not addressed the reasonableness of a strip search policy directed at persons detained for being intoxicated, it has "recognize[d] that 'a strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual.'" *Cochrane v. Quattrocchi,* 949 F.2d 11, 13 (1st Cir.1991) (quoting *Burns v. Loranger,* 907 F.2d 233, 235 n. 6 (1st Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). Accordingly, the First Circuit, echoing the "objective standard" requirement stated in *Delaware v. Prouse, supra,* 440 U.S. at 654, 99 S.Ct. at 1396, has held "that some as-yet undefined 'level of *individualized* suspicion' is necessary before a strip search of a prison visitor can be reconciled with the requirements of the fourth amendment." *Cochrane, supra,* 949 F.2d at 13 (quoting *Blackburn v. Snow,* 771 F.2d 556, 567 (1st Cir.1985)) (emphasis added by *Cochrane* court).

Defendants offer two government interests as justification for the SCHC policy of strip searching all protective custody detainees: (1) "[t]he need for security in the Strafford County House of Correction," and (2) the need to protect the safety of protective custody detainees themselves by preventing such individuals from possessing "any object which might be used by the person" to injure himself or herself. Defendant's Objection Memo at 6.

The interest of maintaining prison security was equally at issue in *Cochrane, supra,* 949 F.2d at 13 ("'in deciding to what standard of reasonableness prison officials strip searching visitors should be held, we must balance the official interest in maintaining security against the intrusion entailed by a strip search'" (quoting *Blackburn, supra,* 771 F.2d at 564)), where, as noted above, the First Circuit held that the Fourth Amendment required the strip search in question to be conducted on the basis of at least "some as-yet undefined 'level of *individualized* suspicion.'" *Id.* (emphasis added). The court notes that defendants have failed to present the court with any evidence showing that intoxicated protective custody detainees are more likely to secrete weapons or other contraband than prison visitors. Accordingly, the court finds that *Cochrane* is controlling with respect to SCHC's interest in maintaining prison security.

With regard to SCHC's interest in protecting intoxicated protective custody detainees from possessing objects of potential harm to themselves, the court notes that defendants have failed to present any evidence showing that (1) intoxicated protective custody detainees are more likely to secrete weapons or other contraband than prison visitors, and (2) that the threat of self harm by such detainees is greater than the threat of harm to prisoners from weapons or other contraband secreted by prison visitors. Accordingly, the court finds that *Cochrane* is also controlling as to SCHC's interest in protecting such detainees from self harm.

---

5. The Supreme Court has held that application of an objective standard is not required where the government's interest is indisputable and the degree of intrusion is minimal. *See Michigan Dept.* *of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (sobriety checkpoint program held constitutional).

In light of the foregoing, the court finds that under the First Circuit's calibration of the Fourth Amendment reasonableness test in *Cochrane, supra,* SCHC's policy of strip searching intoxicated protective custody detainees violates the Fourth Amendment insofar as it permits such searches without any individualized suspicion that a particular detainee may be secreting weapons or other contraband. *See also Stewart v. Lubbock County,* 767 F.2d 153, 154–57 (5th Cir.1985) (policy permitting strip search of person arrested for public intoxication without reasonable suspicion that arrestee possessed weapons or contraband held unconstitutional under *Bell v. Wolfish, supra* ), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Logan v. Shealy,* 660 F.2d 1007, 1009–10, 1013 (4th Cir.1981) (policy permitting strip search of person arrested for driving while intoxicated where "there was no cause in her specific case to believe that she might possess either [weapons or other contraband]" held unconstitutional under *Bell v. Wolfish* ), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). Further, bearing in mind that plaintiff was strip searched without any individualized suspicion that she may have been secreting contraband, the court finds that under *Cochrane* the strip search of plaintiff also violated the Fourth Amendment. *See also Stewart, supra; Logan, supra.*

Accordingly, and recognizing that no genuine issues of material fact remain as to the liability of defendant Strafford County, the court finds as a matter of law that plaintiff is entitled to partial summary judgment against said defendant.

### Conclusion

For the reasons stated herein, the court grants plaintiff's motion for partial summary judgment as to plaintiff's section 1983 claim against defendant Strafford County.

SO ORDERED.