Elliott v. Strafford County          CV-98-637-JD  02/07/01
               UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Sheila Elliott

     v.                              Civil No. 98-637-JD
                                     Opinion No. 2001 DNH 025
Strafford County, et al.


                        O R D E R


     The plaintiff, Sheila Elliott, brings suit alleging civil

rights and state law claims arising from her arrest in Tennessee

on a New Hampshire warrant, the circumstances of her

transportation from Tennessee to New Hampshire, and her treatment

at the Strafford County House of Correction.  She brings claims

against Strafford County, New Hampshire; two county officials;

Transcor America, Inc., the transportation company hired by the

county to transport Elliott from Tennessee to New Hampshire; and

two Transcor employees.  Defendants Strafford County, Strafford

County Sheriff, Richard Cavanaugh, and Superintendent of the

Strafford House of Corrections, Robert LeClair, move for summary

judgment with respect to Elliott's federal claims against them

and ask the court to decline supplemental jurisdiction as to the

state law claims.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The record evidence is taken in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Background

Sheila Elliott drove from New Hampshire to Florida with her five-year-old son on November 17 or 18, 1995. On November 20, 1995, the chief of police in New Durham, New Hampshire, swore out a class A misdemeanor complaint, charging Elliott with interference with custody in violation of N.H. Rev. Stat. Ann.

("RSA") § 633:4. On November 22, the chief charged Elliott with a class B felony on the same charges, and a warrant was issued for her arrest. Elliott was arrested by the Paris, Tennessee, police on December 22, 1995. Elliott was jailed in Henry County, Tennessee, from December 22 until December 31, 1995.

On December 28, Elliott signed a waiver of extradition and agreed to return to New Hampshire. The waiver form said that she agreed "to accompany New Durham New Hampshire P.D. as a prisoner of Strafford County, State of New Hampshire . . . ." Strafford County hired Transcor America, Inc. to transport Elliott from Paris, Tennessee, back to New Hampshire.

Transcor employees, including defendant Marlene Vogel, arrived at the Henry County jail on December 31, 1995, to take custody of Elliott. Once she was in Transcor's custody, Vogel conducted a strip search, including, apparently, a visual body cavity search.[1] Transcor's policy was to strip search all prisoners before putting them into the transportation vehicle.

After the strip search, Transcor agents handcuffed Elliott, applied a restraint that secured her hands to her waist, applied leg irons, and placed her in a small metal cage inside of the transport van. They first stopped in Nashville, Tennessee, where

---

[1]See Blackburn v. Snow, 771 F.2d 556, 561 n.3 (1st Cir. 1985) (defining "strip search" and "visual body cavity search").

Elliott was transferred to a different van with officers Junious Hamm and Sylvester Rush. During the remainder of the seven-day trip, whenever they stopped, Elliott was housed in secure facilities where she experienced substandard conditions including being required at times to sleep on the floor. They arrived at the Strafford County House of Corrections on January 7, 1995.

Upon her arrival at the Strafford County House of Corrections, as part of the intake process, Elliott was required to undress in front of a female corrections officer, shower, and receive a decontamination spray. The parties dispute whether Elliott was subjected to a strip search. The county's inmate intake form concludes with a certification that the "inmate has been interviewed, given a copy of the rules and regulations (or had them read to him/her), <u>been strip searched</u>, decontaminated, showered, and received a (full partial) clothing and toiletries issue." Pl. Ex. 8 (emphasis added). On Elliott's form, the certification is signed by "C/O Roy." Thereafter, Elliott was strip searched after each court appearance and contact with visitors pursuant to county policy. Elliott remained in the jail from January 7, 1996, until February 3, 1996, and then from August 26, 1996, until September 8, 1996.

The charges against Elliott were dismissed when it was determined that she had joint physical custody of her son at the time she was charged with interference with custody.

4

Discussion

The Strafford County defendants contend that they are entitled to summary judgment with respect to Elliott's claim of unreasonable searches in violation of the Fourth Amendment because the intake process did not involve a strip search and the only strip searches performed by the defendants were justified. Defendant LeClair alternatively contends that he is entitled to qualified immunity. The Strafford defendants contend that they are entitled to summary judgment with respect to Elliott's unreasonable arrest claim in Count II and her unlawful transportation claim in Count III because they were not involved in either circumstance. They also move for summary judgment on Elliott's Sixth Amendment claims, Count IV, and her invasion of privacy claims, Count VI. Anticipating that summary judgment will terminate Elliott's federal claims, the Strafford defendants ask the court to decline supplemental jurisdiction as to Elliott's state law claims. Elliott objects.

A.   Unreasonable Searches - - Count I

In Count I, Elliott alleges that "Defendants' acts of strip searching the Plaintiff at numerous times throughout this ordeal

5

and without justification" violated her constitutional rights.[2] The Strafford defendants argue that they are not liable for the strip search conducted by Transcor employee, Marlene Vogel, that no strip search was conducted as part of Elliott's intake process, and that subsequent strip searches were justified under the circumstances.[3] Defendant Robert LeClair asserts qualified immunity as to the claims in Count I against him.

1. Liability arising from the actions of Transcor defendants.

In her objection to summary judgment, Elliott acknowledges that liability under § 1983 cannot be based on a theory of vicarious liability. See Monell v. Dep't of Soc. Servs., 436

---

[2]Although Elliott also alleges that the strip searches violated her due process rights, she is essentially claiming that the strip searches were unreasonable, in violation of the Fourth Amendment. See Albright v. Oliver, 510 U.S. 266, 273 (1994); Bell v. Wolfish, 441 U.S. 520, 560-61 (1979); Magill v. Lee County, 990 F. Supp. 1382, 1386 (M.D. Ala. 1998).

[3]The Strafford defendants do not challenge the basis of Elliott's § 1983 claims against them for strip searches conducted by other employees of Strafford County. Apparently, therefore, the Strafford defendants concede that Elliott has sufficiently alleged claims against them under theories of supervisory or municipal liability. See, e.g., Miller v. Kennebec County, 219 F.3d 8, 12-13 (1st Cir. 2000); Swain v. Spinney, 117 F.3d 1, 10-12 (1st Cir. 1997); Allen v. Bd. of Comm'rs of County of Wyandot, 773 F. Supp. 1442, 1451 (D. Kan. 1991).

U.S. 658, 691 (1978). A supervisor may be held liable under §
1983 only if the plaintiff establishes that "his conduct or
inaction amounts to reckless or callous indifference of her
constitutional rights and that an affirmative link existed
between the constitutional violation and his acts or omissions."
Miller, 219 F.3d at 13 (quotation omitted). A municipality may
be liable only if the plaintiff identifies a municipal custom or
policy that caused her injury. See, e.g., Miller, 219 F.3d at
12-13; Swain, 117 F.3d at 10-12. Elliott argues in opposition to
summary judgment that the Strafford defendants are liable under §
1983 for the strip search conducted by Transcor employee, Marlene
Vogel, because Sheriff Cavanaugh hired Transcor with allegedly
"reckless or callous indifference" to her constitutional rights.

Elliott, however, did not include any allegations of
supervisory or municipal liability in Count I of her complaint.
In order to meet the pleading requirements of Federal Rule of
Civil Procedure 8(a)(2), Elliott must at least "set forth factual
allegations, either direct or inferential, respecting each
material element necessary to sustain recovery under some
actionable legal theory." Romero-Barcelo v. Hernandez-Agosto, 75
F.3d 23, 28 n.2 (1st Cir. 1996). She cannot overcome
deficiencies in her complaint with arguments submitted in
opposition to summary judgment that are not alleged in the
complaint. See Bauchman v. West High Sch., 132 F.3d 542, 550

(10th Cir. 1997).

Therefore, the Strafford defendants are entitled to summary judgment with respect to any claim in Count I that is based on the strip search conducted by Transcor employee Vogel.

### 2. Intake process.

The defendants contend that no strip search occurred during the intake process when Elliott arrived on January 7, 1996, at the Strafford County House of Corrections. They rely on Elliott's description of the intake process in her deposition to show that no strip search occurred. Elliott contends that she was strip searched at that time.

Elliott testified as part of her deposition that she was first scanned with a "yellow thing" that is "like a paddle." Then a female guard took her into a room where, Elliott testified, "I removed my clothes and had to take a shower and then she sprayed me down. I don't know whether I would consider that a strip search or not, but I was told to remove my clothing, take a shower, and she sprayed me down with some kind of lice thing." Elliott dep. at 59-60. Elliott testified that she did not remember whether the guard stayed in the room while she showered. She said that she was told to turn around after she took off her clothes and before she showered. When she was asked if anything else happened, she said no. In her affidavit

submitted in support of her objection to the defendants' motion for summary judgment, Elliott stated, "On January 7, 1996, I arrived at the Strafford County House of Corrections, where I again was subjected to a strip search, to stand naked in front of the correctional officer, to move my body parts, and to exhibit myself." Pl. Ex. 5.

A party cannot create a factual issue sufficient to survive summary judgment by submitting an affidavit that contradicts her own previous sworn statement unless she adequately explains the contradiction or resolves the disparity. See Williams v. Raytheon, 220 F.3d 16, 220-21 (1st Cir. 2000). Elliott contends that her affidavit does not contradict her deposition testimony, but merely provides "a more complete description of the events that occurred."

It is not necessary to resolve the discrepancies between Elliott's two statements because a factual issue exists as to whether she was strip searched on January 7 even if the affidavit statement were not considered. Elliott's description of the circumstances of her shower, taken in the light most favorable to her, provide some evidence that a strip search occurred. That evidence is bolstered by the fact that the corrections officer who signed Elliott's inmate intake form certified that she had been strip searched as part of the intake process. Therefore, a trialworthy issue remains as to whether a strip search occurred

9

at that time.

The defendants argue alternatively that if a strip search occurred, it was constitutionally permissible. To be reasonable within the meaning of the Fourth Amendment, "strip and visual body cavity searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons." Swain, 117 F.3d at 7. The defendants argue that the risks associated with putting Elliott, who was charged with a felony, into the general population of the jail justified a strip search. Elliott was charged with interference with custody, which is not a crime of violence or involving contraband. In addition, Elliott had been in jail and then in the custody of Transcor for more than two weeks before her arrival at the Strafford County facility. The defendants offer nothing that would have given them a reasonable suspicion that she would be carrying weapons or contraband and therefore have not demonstrated that they would be entitled to judgment as a matter of law with respect to a strip search conducted during the intake process. See Fed. R. Civ. P. 56(c).

### 3. Strip searches following contact visits and court appearances.

Elliott contends that the strip searches conducted after she had contact with visitors and after her court appearances violated the Fourth Amendment. The defendants argue that those searches are justified and do not violate the Fourth Amendment.

A strip search complies with the requirements of the Fourth Amendment as long as it is reasonable. See Bell, 441 U.S. at 559. The appropriate inquiry is "whether, on [the particular facts of the case], an objective officer would have had a reasonable suspicion that [the arrestee] was concealing drugs or contraband on her person." Swain, 117 F.3d at 8. For that reason, searches conducted pursuant to blanket strip search policies, without particularized reasonable suspicion, are unconstitutional. See Blackburn, 771 F.2d at 563-65; see also Skurstenis v. Jones, 2000 WL 1880179, *2 (11th Cir. Dec. 28, 2000) (joining all other circuits to have considered issue in holding that strip search policy without reasonable suspicion violates Fourth Amendment).

In Bell, the Supreme Court found that a policy to conduct strip searches and visual body cavity searches of all inmates following contact visits (in which the inmate has direct contact with visitors from outside the prison) did not offend the Fourth Amendment because of the possibility of smuggling contraband into

11

the prison.  See Bell, 441 U.S. at 558-59; see also Peckham v. Wisc. Dep't of Corrections, 141 F.3d 694, 697 (7th Cir. 1998). Inmates may also have direct contact with visitors from outside the prison during court appearances.  Elliott has not demonstrated or even alleged special circumstances that would except her case from the circumstance considered in Bell.  See, e.g., Gary v. Sheahan, 1997 WL 201590, *12 (N.D. Ill. Apr. 18, 1997).  Therefore, the Strafford defendants are entitled to summary judgment with respect to Elliott's claims in Count I that arise from strip searches conducted after contact visits and court appearances.

### 4.  Qualified immunity.

Defendant Robert LeClair asserts that he is entitled to qualified immunity from liability for Elliott's claim in Count I alleging that she was strip searched during the intake process. "Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known."  Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 65 (1st Cir.1997) (quoting Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir.1993)).  Qualified immunity depends on a two-step analysis:

12

"First, was the constitutional right in question clearly established at the time of the alleged violation? . . . Second, would a reasonable, similarly situated official understand that the challenged conduct violated that established right?" Swain, 117 F.3d at 9. Because qualified immunity is an affirmative defense, the burden of proof falls on the party asserting its protection. See DiMarco-Zappa v. Cabanilla, 2000 WL 38433, *8 (1st Cir. Jan. 19, 2001).

LeClair contends that it was not clearly established in 1996 that a pretrial detainee, charged with a felony, had a right not to be strip searched absent reasonable suspicion that she was hiding weapons or contraband. LeClair acknowledges, based on Moser v. Anderson, 93-634-B (D.N.H. Nov. 25, 1996), that it was clearly established in 1996 that an arrestee charged with a minor offense had a right not to be strip searched absent a reasonable suspicion that she was hiding contraband. LeClair distinguishes Elliott's circumstances because Elliott was charged with a felony, which LeClair assumes does not qualify as a minor offense.

In Bell, decided in 1979, the Supreme Court established that the constitutionality of a warrantless strip search depended on the need for the particular search balanced against the intrusion into the personal rights of the person to be searched. See Bell, 441 U.S. at 559. This court, in 1993, held that Strafford

13

County's policy of strip searching all protective custody detainees violated the Fourth Amendment.  See Kidd v. Gowen, 829 F. Supp. 16, 19 (D.N.H. 1993).  Long before 1996, many courts held that strip searches of detainees were not constitutional unless they were justified by at least reasonable suspicion that the person was concealing weapons or contraband.  See Swain, 117 F.3d at 7, 9; see also Ciraolo v. New York, 216 F.3d 236, 238 (2d Cir. 2000); Kidd, 829 F. Supp. at 18.  It was also clearly established in 1996 that the nature of the offense charged was important in determining whether a strip search was justified, which depended on the likelihood that violence or contraband was involved, not on whether the offense was designated a felony or a misdemeanor.  See, e.g., Fuller v. M.G. Jewelry, 950 F.2d 1437, 1446-47 (9th Cir. 1991); Masters v. Crouch, 872 F.2d 1248, 1251-55 (6th Cir. 1989); Newkirk v. Sheers, 834 F. Supp. 722, 787-89 (E.D. Pa. 1993).  Further, Strafford County had particular notice in 1993 that its blanket strip search policies were unconstitutional.  See Kidd, 829 F. Supp. at 18-19.

LeClair offers no argument as to whether a reasonable official in his position would understand that a strip search of Elliott during the intake process would violate her constitutional rights.  Nothing in the record submitted by LeClair even suggests that the offense of interference with custody or other circumstances in Elliott's situation supported a

14

reasonable suspicion that she was hiding contraband or weapons. A reasonable official in LeClair's position would have known that a strip search performed either pursuant to a blanket policy or randomly, without reasonable suspicion, violates the Fourth Amendment.

Based on the record presented for summary judgment, LeClair has failed to show that he is entitled to qualified immunity with respect to Elliott's claim in Count I arising from an alleged strip search during the intake process.

B. Counts II and III - - Unreasonable Arrest/Detention and Unlawful Transportation

In Count II, Elliott alleges that the "Defendants' acts of arresting the Plaintiff on a New Hampshire warrant while located in Tennessee, contrary to the warrant on its face," violated her constitutional rights. In Count III, she alleges that because she agreed in the extradition waiver to be released to the New Durham, New Hampshire, police, "Defendants' acts of releasing the Plaintiff to a private, for-profit corporation, rather than to a police officer of the State of New Hampshire," violated her constitutional rights. Elliott does not differentiate among the various defendants named in the complaint, including the Henry County, Tennessee, defendants, who have been dismissed from the case for lack of personal jurisdiction.

15

The Strafford defendants move for summary judgment on the grounds that Elliott was arrested and detained in Tennessee by the Paris, Tennessee, police department, and she was released by the Henry County officials. Therefore, the Strafford defendants contend that Elliott has failed to allege that they were involved in her arrest, detention, and transportation.

Elliott argues that the Strafford defendants are liable because they initiated the arrest process and hired Transcor to transport her. Elliott, however, did not plead any such claims in Counts II and III. See Fed. R. Civ. Pro. 8(a)(2). The Strafford defendants are entitled to summary judgment on Counts II and III.

C.  Count IV – Sixth Amendment Claims

In Count IV, Elliott alleges that "Defendants' acts immediately after the Plaintiff's arrest, deprived the her [sic] of and violated her rights, privileges, and immunities to a speedy trial, bail and assistance of counsel . . . ." The Strafford defendants contend that the claims do not apply to them because they did not have contact with Elliott immediately after her arrest. Elliott nevertheless argues that the Strafford defendants are liable based on conduct by Transcor. Since Elliott has not alleged supervisory or municipal liability claims against the Strafford defendants, based on Transcor's conduct,

16

they are entitled to summary judgment on Count IV.[4]

D.   Count V - - Violation of a Right to Privacy

In Count V, Elliott alleges a violation of her right to privacy actionable under § 1983 and the common law of New Hampshire.  The Strafford defendants argue that the intake procedure and strip searches after contact visits and court appearances did not violate Elliott's right to privacy for the same reasons that those incidents did not violate the Fourth Amendment.  Elliott argues only that a non-consensual search is a trespass and that the searches were unconstitutional.[5]

The defendants are entitled to summary judgment with respect to Elliott's claim that the strip searches after contact visits

---

[4]In addition, even if such claims had been made, the court previously determined that Elliott had not presented a sufficient record to avoid summary judgment on her claim that Transcor violated her Sixth Amendment rights.  See Order issued January 25, 2001, at 10-12.

[5]Elliott does not explain what federal constitutional or statutory right to privacy, other than the Fourth Amendment right alleged in Count I, she might have intended to claim.  Elliott cites Sutherland v. Kroger Co., 110 S.E.2d 716 (W.Va. 1959) in support of her claim, which was premised on West Virginia law of trespass.  Elliott may intend to make a similar claim under New Hampshire law, despite the lack of citation to relevant legal authority.  Her lack of developed argumentation on the issue, however, prevents a separate analysis under state law.  See, e.g., United States v. Torres-Rosa, 209 F.3d 4, 6 (1st Cir. 2000).

and court appearances were unconstitutional.  Elliott offers no other basis to determine whether a different right of privacy, pertinent to those claims, exists under state or federal law.  It remains unresolved, however, based on the record presented for summary judgment, whether reasonable suspicion justified a strip search during the intake process as required by the Fourth Amendment.  Since the defendants offer no other basis for summary judgment, the motion is denied as to Elliott's privacy claim based on the intake process.

E.    Supplemental Jurisdiction

The defendants ask the court to decline supplemental jurisdiction with respect to Elliott's state law claims.  See 28 U.S.C.A. § 1367(c).  Since summary judgment has not been granted on all federal claims because a trialworthy issue remains as to part of Elliott's § 1983 claim in Count I, the defendants' request is denied.

Conclusion

For the foregoing reasons, the Strafford defendants' motion for summary judgment (document no. 62) is granted as to claims in Count I and Count V arising from strip searches conducted by a Transcor employee and following contact visits and court appearances, but is denied as to claims arising from a strip

18

search during the intake process at Strafford County House of Corrections.  Summary judgment is also granted with respect to Counts II, III, and IV.

With the resolution of the summary judgment motion, the parties should undertake good faith efforts to arrive at a nontrial disposition of this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

February 7, 2001

cc:   James W. Craig, Esquire
      Donald E. Gardner, Esquire
      Michael D. Ramsdell, Esquire
      Charles K. Grant, Esquire

19