# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2010

No. 09-40892

Lyle W. Cayce
Clerk

OSCAR GABRIEL JIMENEZ; CHANDRA RAE JIMENEZ,

Plaintiffs-Appellees

v.

WOOD COUNTY, TEXAS; SHERIFF DWAINE DAUGHERTY,

Defendants-Appellants

Appeal from the United States District Court
for the Eastern District of Texas

Before GARZA and BENAVIDES, Circuit Judges, and LYNN[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Appellants Wood County, Texas, and Sheriff Dwaine Daugherty (collectively "the County") appeal the judgment against them pursuant to 42 U.S.C. §1983, as well as the district court's award of attorney fees. For the reasons set forth herein, we affirm.

**I**

Plaintiffs Oscar and Chandra Jimenez ("the Jimenezes") operated a bar in an area of Wood County that Sheriff Daugherty identified as associated with significant amounts of drug activity. Agents of the Texas Alcoholic Beverage Commission("TABC"), in coordination with officers of the Wood County Sheriff's

---

[*]District Judge of the Northern District of Texas, sitting by designation.

Department, conducted a raid on the bar. During the raid, the TABC agents had an initial confrontation with Mr. Jimenez, after which Mr. Jimenez fled and the agents were unable to find him. Agents eventually discovered him locked in the trunk of an automobile registered to the Jimenezes. Ms. Jimenez, who had the keys to the automobile, unlocked the trunk for the agents after multiple requests. Ms. Jimenez was arrested for hindering apprehension, which the parties agree was a Class A misdemeanor under these circumstances. She was taken to the Wood County jail where an employee of the Wood County Sheriff's Department performed a strip search on her. The parties agree that, at the time, it was the department's policy to perform strip searches on all detainees entering the jail who were arrested for a felony, Class A misdemeanor, or Class B misdemeanor.[1]  Mr. Jimenez was also arrested.

The Jimenezes sued the TABC, Wood County, and Sheriff Daugherty under 42 U.S.C. § 1983, alleging violations of their constitutional rights arising out of their arrests, the TABC's alleged use of excessive force against Mr. Jimenez, and the strip search of Ms. Jimenez. The claims against the TABC were eventually settled and dismissed. The claim against the County based on the strip search of Ms. Jimenez proceeded to trial. The jury entered a verdict finding the County liable for violating Ms. Jimenez's rights under the Fourth Amendment and imposing actual damages of $55,000, as well as punitive damages of $5,000 against Sheriff Daugherty. The Jimenezes then sought $222,780 in attorney fees and $43,337.83 in expenses pursuant to 42 U.S.C. § 1988. Upon review of the claimed fees, the district court granted $157,394.60 in fees and $37,153.95 in expenses. The County appeals from both the judgment against it and the fee award.

---

[1] The sheriff's actual testimony is that this policy applied to all detainees "charged" with a Class B misdemeanor or above. Both parties, however, characterize the policy as applying to all detainees arrested for such offenses.

## II

The County argues that it was not required to base its search of Ms. Jimenez on reasonable suspicion for two reasons.    First, it argues that we should reverse our prior precedents and hold that, under *Bell v. Wolfish*, 441 U.S. 520 (1979), the Fourth Amendment permits visual strip searches of all jail detainees upon being booked into a detention facility, regardless of reasonable suspicion.  Second, the County argues in the alternative that the district court erred in classifying hindering apprehension as a "minor offense," and that the nature of Ms. Jimenez's offense therefore justified the search regardless of the lack of individualized reasonable suspicion.   For the following reasons, we disagree.

## A

The County argues that we should hold that there is no requirement of reasonable suspicion for strip searches of newly arrested detainees regardless of the offense giving rise to the arrest, overruling a number of cases we have decided under *Wolfish*.[2]  In *Wolfish*, the Supreme Court held that strip searches in a prison setting could be performed based on "less than probable cause."  441 U.S. at 560.  We have repeatedly concluded that, under *Wolfish*, a strip search of an individual arrested for a minor offense must be premised on reasonable suspicion that the detainee is carrying weapons or contraband.  *See, e.g.*, *Kelly v. Foti,* 77 F.3d 819, 821 (5th Cir. 1996) ("Jail officials may strip search a person arrested for a minor offense and detained pending the posting of bond only if they possess a reasonable suspicion that he is hiding weapons or contraband.");

---

[2] Although overruling is not appropriate at this stage, there may be compelling reasons to reconsider these precedents en banc in an appropriate case.  Recent en banc panels of the Ninth and Eleventh Circuits have reconsidered similar precedents in their circuits and ultimately agreed with the County's position. *See Bull v. City & County of San Francisco*, 595 F.3d 964, 977 (9th Cir. 2010) (en banc) (overruling *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1446-47 (9th Cir. 1989); *Giles v. Ackerman*, 746 F.2d 614, 615 (9th Cir. 1984));  *Powell v Barrett*, 541 F.3d 1298, 1314 (11th Cir. 2008) (en banc) (overruling *Wilson v. Jones*, 251 F.3d 1340, 1343 (11th Cir. 2001)).

*Watt v. City of Richardson Police Dep't*, 849 F.2d 195, 198 (5th Cir. 1988) (holding that visual strip search of arrestee for failure to register a dog, based solely on the arrestee's prior drug offense conviction, was unconstitutional); *Stewart v. Lubbock County, Tex.*, 767 F.2d 153, 156–57 (5th Cir. 1985) ("Because Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, under the balancing test of *Wolfish* we find such searches unreasonable and the policy to be in violation of the Fourth Amendment.").

The County argues that we should overrule those cases to bring our precedents into line with "the growing trend" among courts. As the County concedes, interpretations of *Wolfish* vary greatly between circuits. *See, e.g.*, *Bull*, 595 F.3d at 980-81 (9th Cir. 2010) (en banc) (holding that mandatory, routine visual strip search policy for all arrestees who were to be introduced into general jail population was constitutional); *Powell*, 541 F.3d at 1314 (en banc) (holding that a policy of strip searching every arrestee booked into a jail or detention facility does not violate the Fourth Amendment); *Roberts v. Rhode Island*, 239 F.3d 107, 112-13 (1st Cir. 2001) (holding that mandatory visual strip search policy at correctional institution intake center was unconstitutional); *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986) (holding that mandatory visual strip search policy in county jail was unconstitutional), *cert. denied*, 483 U.S. 1020 (1987).

"[A] panel of this court can only overrule a prior panel decision if 'such overruling is unequivocally directed by controlling Supreme Court precedent.'" *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001) (quoting *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir.1991)). Thus, even if there is a trend in favor of abolishing reasonable suspicion requirements in this setting, a trend alone does not justify a panel reversing prior decisions of the court. Because the County has not identified a Supreme Court case that

unequivocally directs us to do otherwise, we must consider this case under our existing precedents.

**B**

The County argues next that the district court erred in concluding that hindering apprehension is a "minor offense" and by instructing the jury accordingly. Specifically, it argues that the seriousness of the offense and the fact that it could result in up to a year of incarceration establish that the offense is not "minor." A party challenging a jury instruction must show that the charge, as a whole, created a "substantial and ineradicable doubt" as to whether the jury was properly instructed and that the error "could . . . have affected the outcome of the case." *Taita Chem. Co. Ltd. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003) (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994); *Bender v. Brumley*, 1 F.3d 271, 276-77 (5th Cir. 1993)). Under our precedents, the question of whether hindering apprehension is a minor offense is a component of the broader *Wolfish* balancing test for determining the reasonableness of the search. *See Stewart*, 767 F.2d at 156-57 (discussing "the balancing test of *Wolfish*"). "We review questions of law, including whether the district court's ultimate conclusions of Fourth Amendment reasonableness are correct, de novo." *United States v. Maldonado*, 472 F.3d 388, 392 (5th Cir. 2006) (citing *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir.1998)).

The Jimenezes argue that this challenge was not sufficiently preserved due to the cursory nature of the County's objection at trial, in particular the fact that the objection did not explicitly challenge the court's instruction to the jury that reasonable suspicion was required for the search. The County, however, did note its objection to the district court's "finding that [misdemeanor hindering arrest] was a minor offense as a matter of law," and the district court replied that it had considered the relevant precedent and concluded that it was. The County is correct to point out that, under our precedents, the "minor offense" determination foreclosed the possibility of a ruling that reasonable suspicion was

not required. Although the County might have been better served by a more thorough and explicit challenge, its actions were sufficient to preserve the issue of whether hindering apprehension was a minor offense.

An individual commits hindering apprehension when he, "with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense . . . (1) harbors or conceals the other; (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (3) warns the other of impending discovery or apprehension." TEX. PENAL CODE ANN. § 38.05(a). The County concedes that, under these circumstances, hindering apprehension is a Class A Misdemeanor punishable by a fine not to exceed $4,000, incarceration for a term not to exceed one year, or both. *Id.* § 38.05(c), § 12.21. However, "if the person who is harbored, concealed, provided with a means of avoiding arrest or effecting escape, or warned of discovery or apprehension is under arrest for, charged with, or convicted of a felony," and the individual charged with hindering apprehension had knowledge of that fact, hindering apprehension is a felony in the third degree. *Id.* § 38.05(d).

The question of whether hindering apprehension is a minor offense for the purpose of a strip search is an issue of first impression. However, the classification of a crime as a misdemeanor has been treated by other circuits as a relevant or even determinative factor in ascertaining whether there is a reasonable suspicion requirement. *See Roberts*, 239 F.3d at 112 ("[W]hen the inmate has been charged with only a misdemeanor involving minor offenses or traffic violations, crimes not generally associated with weapons or contraband, courts have required that officers have a reasonable suspicion that the individual inmate is concealing contraband."); *Weber*, 804 F.2d at 804 ("We conclude that a reasonable suspicion that an accused misdemeanant or other minor offender is concealing weapons or other contraband—suspicion based on the particular traits of the offender, the arrest and/or the crime charged—is necessary before subjecting the arrestee to the indignities of a strip/body cavity

search."). In other settings, as well, misdemeanors have historically been considered minor offenses.[3]  In *Stewart*, we cited the applicability of the challenged policy to individuals arrested for misdemeanors in support of our conclusion that the challenged policy was unconstitutional because it applied to minor offenders when no reasonable suspicion existed that they might possess weapons or contraband. *See Stewart*, 767 F.2d at 156 (noting that "the detainees were arrestees awaiting bond on misdemeanor or traffic violation charges").  In *Stewart*, however, the detainees had been arrested pursuant to Class C misdemeanors, which, unlike the Class A misdemeanor in this case, were punishable only by fine.  Nevertheless, in light of the persuasive authority, we hold that hindering apprehension—other than felony hindering apprehension under section 38.05(d), the status of which is not before us—is, given its misdemeanor status, a minor offense for these purposes and reasonable suspicion was therefore required for a strip search.  Accordingly, any instruction to that effect did not amount to error.

## III

The County argues next that Sheriff Daugherty was entitled to qualified immunity from § 1983 liability because he did not violate a clearly established right.  When a defendant invokes the qualified immunity defense, the burden is on the plaintiff to show its inapplicability. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  To do so, the plaintiff must show not only a violation of a constitutional right, but also that the defendant's actions were objectively unreasonable in light of clearly established law at the time of the complained of actions. *Id.* "To be clearly established for purposes of qualified

---

[3] In now-repealed statutes governing the authority of United States Commissioners, for example, "minor offenses" were defined as "misdemeanors punishable under the laws of the United States, the penalty for which does not exceed imprisonment for a period of one year, or a fine of not more than $1,000, or both." *Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 901 n.18 (3rd Cir. 1992) (quoting 82 Stat. 1116, formerly codified at 18 U.S.C. § 3401(f) (1964 Supp IV)).

immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 256 (internal citations omitted). The Jimenezes argue first that this issue has not been preserved for appeal and that, even if the issue is preserved, the district court did not err because Ms. Jimenez's rights were clearly established.

We agree with the Jimenezes that this issue was not properly preserved for appeal and that, therefore, it is inappropriate for our consideration. *See State Indus. Prods. Corp. v. Beta Tech. Inc.*, 575 F.3d 450, 456 (5th Cir. 2009) (discussing waiver of arguments not raised at trial). In its reply brief, the County cannot point to any instance in which it argued that Daugherty was, as a matter of law, entitled to qualified immunity because Ms. Jimenez's rights were not clearly established. Instead, it merely cites its objection to the jury instruction that hindering apprehension was a minor offense. The County argues that the district court's decision to include this instruction over its objection "essentially required the jury to find that Sheriff Daugherty was not entitled to qualified immunity," and, "[t]herefore, the [d]istrict [c]ourt essentially ruled on the issue of qualified immunity." We disagree. The questions of what the law is – here, whether the offense was minor – and whether the law is clearly established are distinct. By ruling and instructing the jury that hindering apprehension is a minor offense, the district court did nothing to foreclose an argument that the relevant law was not clearly established. Therefore, we cannot consider the County's late-arising arguments for qualified immunity, regardless of their merit.

## IV

The County has also argued – albeit only briefly – that the search was made pursuant to reasonable suspicion that Ms. Jimenez possessed weapons or

contraband.[4]    Reasonable suspicion arises where there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" – in this case, specific and articulable facts warranting the suspicion that Ms. Jimenez was carrying weapons or contraband. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The County bases its argument that it had reasonable suspicion on two facts: that Ms. Jimenez was arrested in an area where "drug use abounds" and that she had allegedly concealed her husband in the trunk of her automobile. Whether specific facts give rise to reasonable suspicion is a question of law that we review de novo. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 737 (5th Cir. 2000).

We are unpersuaded that Ms. Jimenez's presence in a "high drug area" gives rise to reasonable suspicion that she was in possession of weapons or contraband. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Likewise, it cannot support a reasonable, individualized suspicion of possession of weapons or contraband. The County's argument is further undermined by the fact that Ms. Jimenez's presence in the area was explained by the fact that the bar was located there – that is to say, she was not simply in the area with no apparent explanation.

We also cannot conclude that Ms. Jimenez's possible concealment of her husband gave rise to reasonable suspicion that she was carrying weapons or

---

[4] We note preliminarily that it is questionable whether the County has adequately preserved this argument for appeal. The argument was omitted from the statement of the issues and is included in the brief within a subsection devoted to the question of whether hindering apprehension is a minor offense. *See Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 n.3 (5th Cir. 2002) (holding that issue raised in conclusion of brief, but omitted from statement of issues and body of brief, was not preserved). Nevertheless, because the issue was argued with appropriate citations to the record and precedent in the main body of the brief, and the Jimenezes have had adequate opportunity to respond in their brief, we will consider this argument, assuming without deciding that it was adequately preserved.

contraband. Even when an offense is minor, we may consider the nature of that offense in determining whether there was reasonable suspicion. *See Watt*, 849 F.2d at 197 (5th Cir. 1988) (stating that reasonable suspicion may be based on factors including "the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record"). In this instance, however, the nature of the offense is simply too attenuated from the possibility that Ms. Jimenez was concealing contraband or a weapon. Ms. Jimenez was not arrested for concealing weapons or contraband; she had allegedly been concealing an individual, who had been found. Were we to hold that this fact gave rise to reasonable suspicion, we would have little choice but to extend that reasonable suspicion to all individuals arrested for offenses involving some manner of concealment, regardless of what was concealed – or, at the very least, all such defendants arrested in areas identified by police as associated with criminal activity. The County has cited no authority in support of so broad a holding. Accordingly, we hold that there was no reasonable suspicion to justify the strip search.

## V

The County argues that the district court erred in determining the amount of fees by attributing fees and costs to the County and the sheriff that were incurred in litigating against the TABC before settlement. The County further argues that the fees were "grossly disproportionate" to the damages the Jimenezes recovered. The Jimenezes argue that it was appropriate to consider the pre-settlement fees because the claims against the County were inextricably intertwined with Mr. Jiminez's claims against the TABC.

The determination of a fees award is a two-step process. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Id.* The court should exclude all time that is excessive, duplicative, or inadequately documented. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Once the

10

lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *But see Perdue v. Kenny A.*, 130 S.Ct. 1662, 1669 (2010) (limiting upward adjustments in light of "a strong presumption that the lodestar is sufficient"). The court must provide "a reasonably specific explanation for all aspects of a fee determination." *Perdue*, 130 S.Ct. at 1676. We review the award for abuse of discretion. *Id.*

The district court's detailed order plainly takes into account the fact that the TABC had been dismissed as a party to the litigation. Specifically, the court found that the issues raised against the TABC and the County were closely intertwined. Accordingly, the court found that much of the discovery the Jimenezes conducted from TABC was relevant in the case at trial, even though the TABC claims had settled. The court nevertheless reduced the hours spent by attorney Edwin Wright by 25% to reflect the dismissal of the TABC claims. The court also noted that the Jimenezes' other attorney had already deducted or reduced hours billed where the entry was not relevant to the County or where work was applicable to both the County and TABC and concluded that further reduction was not necessary. For unrelated reasons, the court reduced the requested hourly rate from $300 to $275. The court finally considered the *Johnson* factors and reduced the lodestar amount by 20% accordingly.

We agree that the district court's allocation of hours to the claims against the County was within its discretion in light of the close relationship between the claims against the TABC and the County. The circumstances of the raid and Ms. Jimenez's subsequent arrest are relevant to the ultimate question of the reasonableness of the search. Because the raid involved coordination between the TABC and the County, the issues and resulting attorney hours underlying the claims against the various defendants, though not perfectly coextensive, were closely intermingled. Moreover, the County's argument, in the alternative, that the fee award is unreasonable solely in light of the ratio between the fees

11

No. 09-40892

and the recovery is conclusory and unsupported.  Accordingly, the district court did not abuse its discretion in the calculation of the fees.

## VI

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects.