# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 24, 2012

No. 10-51236

Lyle W. Cayce
Clerk

TONY SMITH,

Plaintiff – Appellant

v.

HUBERT ARTURO ACEVEDO, also known as Art Acevedo, In his official
capacity as Chief of Police of the City of Austin and in his personal capacity;
MIKE CRONIG, In his official capacity as Assistant City Attorney of the City
of Austin and in his personal capacity; CITY OF AUSTIN,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:09-CV-620

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Tony Smith ("Smith") brought this §1983 suit claiming that defendants:
(1) wrongfully terminated him as an Austin, Texas police officer based on an
unconstitutional Austin Police Department ("APD") General Order
[A201.04(G)(2)]; (2) retaliated against him for exercising his First Amendment
rights; (3) deprived him of his "liberty and property rights," in violation of §

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-51236

1983; (4) committed the Texas state tort of defamation; and (5) conspired together to slander him.  The parties then filed cross-motions for summary judgment.  The district court granted summary judgment in favor of Smith with respect to his claim that the APD General Order A201.04(G)(2) was an unconstitutional prior restraint of free speech.  The district court otherwise denied Smith's motion for summary judgment, and granted the defendants' motion for summary judgment on all remaining claims.  Smith now appeals.

## FACTS AND PROCEDURAL HISTORY

### I.     *Factual Background*

Smith is a former police officer for the City of Austin, Texas ("the City"), who was terminated for insubordination, undermining the Chief of Police's authority, and misusing the City computers.  In part, Smith's termination resulted from his 2005 agreed upon and non-appealable 60-day suspension for various violations of APD General Orders.  As described below, many of the facts of this case are undisputed and were presented in a quasi-judicial post-termination appeal hearing conducted by an independent hearing examiner.

On May 30, 2008, Chief Hubert Acevedo ("Acevedo") terminated APD Sergeant Dustin Lee and issued a memorandum explaining that Lee had been terminated for sexual harassment and dishonesty. Three days later, Smith was serving as a patrol officer on the evening shift based out of the Central East Substation in Austin, Texas, when he overheard several other officers discussing Lee's termination.  During this discussion, Smith recalled reading a newspaper article indicating that Acevedo had been accused of sexual harassment at a former job.  Because Smith believed it was "ironic" that Acevedo had previously been accused of sexual harassment, but had terminated Lee, Smith went into the "show-down" room to use a City computer to conduct

No. 10-51236

additional research into the allegations against Acevedo.[1]  While researching, Smith found a website that contained potentially embarrassing allegations against Acevedo, copied that information to a word document, and printed the document from a City printer.  Smith then showed the document to Officers Anderson and Justesen.  Upon showing Anderson the document, Smith questioned: "How is Acevedo going to terminate Lee when he did the same thing?"[2]

Later, Smith posted the document on the bulletin board in the "show-down" room, where it could be viewed by officers of every patrol shift.  Smith acknowledged that the allegations contained in the document were potentially personal and highly embarrassing to Acevedo, and that he did not know whether the allegations were true.  At the conclusion of the evening shift (the next morning), Officer James Purcell noticed the document and reported Smith's actions to Sergeant Slater, a supervisor of another shift.  Sergeant Slater reported the incident up the chain of command to Commander Rob Gamble.  Believing that the incident was a violation of APD's General Orders, Commander Gamble initiated an Internal Affairs ("IA") complaint against Smith.  On June 16, 2008, Smith signed a memorandum acknowledging his receipt of the IA complaint.

After conducting an investigation, IA sent an "Investigative Summary" memorandum to Acevedo on August 6, 2008.  According to the Investigative Summary, IA interviewed Smith,[3] Purcell, and Justesen, and received written statements from Sergeant Slater and Anderson.  The Investigative Summary

---

[1]  The "show-down" room is where officers return to after their respective shifts and draft reports and turn in evidence.

[2]  It is not exactly clear what Smith said, but both parties cite to facts that indicate Smith said something along these lines.

[3]  Smith was represented by counsel during the IA interview.

No. 10-51236

concluded by recommending that the allegations against Smith be sustained for (1) violation of APD General Order A312.03(A)(1), for improper computer use; and (2) violation of APD General Order A201.04(G)(2), for criticizing the APD in a way that was defamatory and undermined its effectiveness.

On August 27, 2008, APD conducted a Disciplinary Review Hearing ("DRH"). Because Acevedo was involved in the subject matter of the complaint, Acevedo recused himself and appointed Assistant Chief Holt. Prior to the DRH, Smith and his attorney were able to review the charges and evidence against him.

At the outset of the DRH, Smith was advised that Acevedo, as Chief of Police, was considering adding an additional allegation of insubordination against him.[4] During the DRH, Smith was provided the opportunity to answer questions and make statements. He did both. Smith also submitted a written statement wherein he admitted, "I understand that some of my actions were violations of department policy." At the conclusion of the DRH, Sergeant Hightower, Lieutenant Rosch, and Commander Gamble (collectively "Smith's chain of command")[5] recommended to Acevedo that all allegations, including the additional allegation of insubordination, be sustained against Smith.[6] Acevedo agreed with the recommendation and sustained all of the allegations against Smith.

---

[4] Although the record does not indicate the specific basis for this recommendation, APD policy defines insubordination as "[d]efying the authority of any supervisor by obvious disrespect, arrogant or disrespectful language or conduct, ridicule, or bold challenge to orders issued." APD General Order A201.04(E)(2).

[5] "Chain of command" is used throughout the parties' briefs in order to describe an officer's supervisors.

[6] Although Acevedo could recuse himself from attending the DRH, he could not recuse himself from making the final disciplinary decision. According to Texas civil service law, the police chief has the sole authority to suspend or terminate police officers. *See* TEX. LOC. GOV'T CODE § 143.052(b).

No. 10-51236

After the DRH, Acevedo offered Smith the opportunity to resign or to take a 30-day unpaid suspension in lieu of termination. Smith declined both offers. However, Smith's chain of command had recommended that Smith be terminated. Before deciding the appropriate disciplinary action, both Smith's chain of command and Acevedo reviewed Smith's work history.

On September 10, 2008, Acevedo issued a memorandum ("2008 memorandum"), drafted by Mike Cronig ("Cronig"), terminating Smith. According to the 2008 memorandum, Smith's termination was based in-part on a 2005 memorandum, which indicated that Smith had been suspended for sixty days for violating five APD rules and regulations. Specifically, the 2005 memorandum indicated that Smith violated: (1) A201.02(H)(1), "Associating with Persons of Bad Reputations"; (2) A201.03(E)(3)(d) & (e), "Unethical Interference with Investigation of Legal Process"; (3) A201.01(C)(1) & (2), committing Texas state law crimes of criminal conspiracy and money laundering; (4) A201.04(E)(1), for insubordination; and (5) A312.03(A)(1), for unauthorized computer use.[7] The 2008 memorandum acknowledged that Smith signed the 2005 memorandum acknowledging the receipt of the 2005 memorandum and his understanding that he forfeited his right to appeal the 60-day suspension in return for the then-Chief of Police Knee not exercising his right to terminate Smith for the violations. Based on Smith's conduct as reported in the 2005 memorandum and the 2008 APD violations, Acevedo signed the 2008 memorandum terminating Smith.

---

[7] In 2005, Smith entered into an agreed 60-day unpaid suspension for conduct associated with his sexual relationship with a known user of methamphetamine. During the relationship, Smith used APD computers to conduct warrant searches on his paramour at her request, failed to arrest or detain his paramour after he believed she had purchased drugs, advised his paramour that she could conceal a drug transaction by obtaining a receipt for cleaning services from her drug dealer, and continued to see his paramour despite his chain of command's directive to terminate the relationship.

No. 10-51236

Soon after his 2008 termination, Smith exercised his right to appeal to an independent hearing examiner. Smith was represented by a lawyer throughout the entire appeal process. Both parties were able to present documentary evidence, subpoena witnesses, examine and cross-examine witnesses, make evidentiary objections to the hearing examiner, and present opening statements and closing arguments. Moreover, witnesses were placed under oath, the rule[8] was invoked, and a transcript was made of the proceedings.

On May 4, 2009, the hearing examiner issued a written opinion upholding Acevedo's decision to terminate Smith based on his finding that Smith violated all three of the cited APD General Orders, as well as his finding that the 2005 discipline had failed to correct Smith's conduct. Because Smith could not appeal the hearing examiner's decision to a Texas state court, *see* TEX. LOC. GOV'T CODE § 143.057(j), Smith filed this suit in the District Court for the Western District of Texas, Austin Division.

II.    *Procedural Background*

On August 14, 2009, Smith brought suit against defendants Acevedo, Cronig, and the City (collectively "the defendants"), alleging that: (1) Acevedo and Cronig denied him his due process rights, in violation of 42 U.S.C. § 1983; (2) Acevedo and Cronig wrongfully retaliated against him by terminating his employment as an Austin Police Officer for exercising his First Amendment rights; (3) the City has a policy that imposes a prior restraint on free speech in violation of the First Amendment; (4) defendants committed the state law tort of defamation against him; and (5) defendants conspired to slander him. The defendants timely answered Smith's complaint, denied the claims against them, and asserted several affirmative defenses. Specifically, Acevedo and Cronig

---

[8] Although there is no reference to the specific rule invoked, we can assume that the parties were referring to the exclusion of witnesses from the hearing under Federal Rule of Evidence 615 because this is in the context of a hearing where witnesses were examined.

assert, *inter alia*, that they are entitled to qualified immunity for Smith's federal claims, and official immunity for Smith's state law defamation and slander claims. The City asserts that it is entitled to sovereign or governmental immunity.

On August 2, 2010, the defendants filed their motion for summary judgment. Smith then filed his motion for summary judgment. After reviewing the parties' motions, the district court granted Smith's motion for summary judgment with respect to his claim that APD General Order A201.04(G)(2), prohibiting criticism of the departments, is an unconstitutional prior restraint on free speech. The district court otherwise denied Smith's motion for summary judgment, and granted the defendants' motion for summary judgment on all remaining claims.

On September 20, 2010, the district court entered its final judgment, awarding Smith nominal damages in the amount of one dollar, plus all costs, with respect to his claim that APD General Order A201.04(G)(2) is a facially unconstitutional prior restraint of free speech.  In addition, the district court entered its final judgment for the defendants on all remaining claims and taxed all costs of defending the suit against Smith.

Thereafter, Smith filed two motions for reconsideration. The district court denied both.  Aggrieved by the district court's final judgment, Smith timely appealed.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *United States v. Caremark, Inc.*, 643 F.3d 808, 814 (5th Cir. 2011).  Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a  matter of law."  FED.R.CIV.P. 56(a).  A genuine issue of

material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]ll facts and evidence must be taken in the light most favorable to the non-movant." *LeMarie v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). To avoid summary judgment, however, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). This court is "not limited to the district court's reasons for its grant of summary judgment" and "may affirm the district court's summary judgment on any ground raised below and supported by the record." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008).

## DISCUSSION

On appeal, Smith raises four issues challenging the district court's order granting in-part and denying in-part the parties' motions for summary judgment. Smith claims the district court erred in holding that: (1) Smith suffered "no actual damage" with respect to his claim that APD General Order A201.04(G)(2) constituted an unconstitutional prior restraint of his right to free speech; (2) an officer is guilty of insubordination when that officer defies a rule or regulation that is later determined to be unconstitutional; (3) Acevedo and Cronig were entitled to qualified immunity; and (4) Smith was entitled only to $2500.00 in attorney's fees.

### I.    *Actual Harm*

Smith claims that the district court erred in holding that he suffered "no actual harm," despite the district court's finding that APD General Order A201.04(G)(2), prohibiting criticism of the department, constituted an unconstitutional prior restraint on free speech, in violation of the First Amendment. In other words, Smith asserts, but for violating an APD General

Order that was later determined to be unconstitutional, he would not have been terminated.  Furthermore, Smith states that the district court's reliance on his statement – "The reasons for the disciplinary action . . . were insubordination, criticism of Acevedo, and unauthorized computer use.  Any of these infractions could have resulted in Plaintiff's termination" – was erroneous because he was terminated based primarily on criticizing Acevedo, the violation that was later determined to be unconstitutional as a prior restraint on free speech.

To the contrary, defendants claim that "Acevedo could have, and did in fact, terminate Smith for violations of other applicable [APD] General Orders as well as his prior disciplinary history."  Defendants primarily rely on the 2008 memorandum which focuses on Smith's conduct as a whole; not on the fact that Smith violated a particular APD General Order.  This included "Smith's work performance, his disciplinary history, his presentation to Internal Affairs and the [DRH], his working relationship with his peers, his untruthfulness, his attempts to mitigate his true culpability . . . [and] Smith's sustained violations, especially his 2005 conduct . . . ."  The defendants also cite to the DRH's independent hearing officer's opinion in which the hearing officer stated:

> The 2005 agreed suspension was for very serious misconduct.  The misconduct in this case is also serious.  Because the computer and insubordination charges are sustained in both cases, it is apparent that the prior discipline did not correct the misconduct.  Therefore, it appears that an indefinite suspension is an appropriate discipline in this case.

As the district court granted defendants summary judgment as to actual harm, we view the facts and evidence with regard to such issue "in the light most favorable to the [Smith]."  *See LeMarie*, 480 F.3d at 387.  Nevertheless, it is clear that, beyond violation of APD General Order A201.04(G)(2), Smith was terminated based on his work performance, his disciplinary history, and sustained violations for unauthorized computer use and insubordination in both

2005 and 2008.  Moreover, assuming that Smith was not charged with violating APD General Order A201.04(G)(2), Smith conceded that he could have been terminated based upon the insubordination or unauthorized computer use violations.  Although Smith argues that he would not have been terminated for those infractions, he fails to cite any evidence in the record to create a genuine dispute with the 2008 memorandum, which places significant emphasis on his recidivism.  Based on these facts, it is clear that Smith suffered no actual harm for violating an unconstitutional APD General Order because Smith would have been terminated notwithstanding that violation.

## II.    *Finding of Insubordination*

Here, Smith claims that the district court erred in determining that his behavior was "clearly insubordinate" because "defiance of a rule that is in violation of the First Amendment is NOT punishable as 'insubordination.'"  Smith argues that the City's disciplinary process defines insubordination differently than the district court; and therefore, the district court erred in determining that he was insubordinate.

Because the district court granted summary judgment in favor of defendants with respect to this claim, this court must view "all facts and evidence . . . in the light most favorable to [Smith]."  *LeMarie v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).  However, Smith offers no evidence or authority in support of his claim that his insubordination charge stemmed solely from his violation of an unconstitutional APD General Order.  Smith offers only the conclusory allegation that "any rule purporting to punish Tony Smith for disobeying [APD General Order A201.04(G)(2)] is likewise invalid and unenforceable."

Pursuant to APD General Order A201.04(E)(2), an officer is guilty of insubordination if he defies "the authority of any supervisor by obvious

disrespect, arrogant or disrespectful language or conduct, ridicule, or bold challenges to orders issued . . . ." APD General Order A201.04(E)(2). In contrast to Smith's argument, insubordination does not require a violation of a APD General Order, much less violation of APD General Order A201.04(G)(2). Prior to posting the highly personal and embarrassing allegations about Acevedo, Smith showed that information to two other officers in response to Acevedo's termination of Lee. Smith further commented to at least one other officer that Acevedo's termination of Lee was hypocritical, or "How is he (Acevedo) going to terminate Lee for sexual harassment when he (Acevedo) did the same thing?" Here, it is evident that Smith's conduct was disrespectful and was obviously intended to ridicule Acevedo and his decisions concerning the APD. According to APD General Order A201.04(E)(2) and the record before us, the district court correctly determined that Smith's conduct constituted insubordination, regardless of whether it also violated APD General Order A201.04(G)(2).

III.    *Qualified Immunity and Due Process Claims*

In his first amended complaint, Smith contends that the defendants deprived him of his (1) property interest in his reputation; (2) his liberty interest in free speech and freedom of the press;[9] and (3) liberty and property interest in his employment. The district court, however, dismissed Smith's claims because Smith failed to establish a violation of his due process rights, some or all of Smith's claims were time barred by the statute of limitations, and the evidence established that the defendants were entitled to qualified immunity.

---

[9] On appeal, Smith fails to challenge the district courts holding with respect to this issue. Therefore, we do not address this issue here.

No. 10-51236

Initially, it should be noted that Smith's brief to this court fails to specifically argue that the district court erred when it determined Smith was not deprived of his liberty or property interest. Instead, Smith makes the conclusory statement that defendants are not entitled to qualified immunity because they acted without the authority of law.[10] The only factual evidence Smith seems to rely on comes from his reply to the defendants' response to plaintiff's motion for summary judgment.

In his reply, Smith states that Cronig drafted the 2005 memorandum containing the money laundering and criminal conspiracy charges but made no effort to support those charges with any evidence. Smith claims that Cronig then drafted the 2008 memorandum and inserted the 2005 money laundering and criminal conspiracy charges without further investigating the truth of those charges. Finally, Smith asserts that when Acevedo and Cronig published the 2008 memorandum they violated his due process rights because neither of them knew of any evidence to support the 2005 money laundering and criminal conspiracy charges.

Here, it is apparent that Smith is trying to challenge the authenticity of the 2005 money laundering and criminal conspiracy charges by claiming that the defendants, in 2008, did not have any evidence to support their allegations that Smith committed the 2005 offenses. However, to the extent that Smith alleges due process violations that occurred in 2005, his claims are time barred.

Because § 1983 does not have a designated statute of limitations, the forum state's general tort statute of limitations applies; in Texas, this statute of limitations period is two years. *Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (Tex. 2005). Smith signed the 2005 memorandum on April 20, 2005;

---

[10] Smith attempts to make an *ultra vires* claim against defendants, but again cites only to case law and concludes, without more, that defendants acted without authority of law and are therefore not entitled to qualified immunity.

No. 10-51236

he brought this suit on August 14, 2009. Therefore, any claims stemming from the process he received in 2005 are time barred.

IV.    *Attorney's Fees*

In its final judgment, the district court ordered that the City of Austin pay costs associated with the claim on which Smith prevailed, and that Smith should pay costs for the remaining claims. Thereafter, both parties filed their motions for attorney's fees and bill of costs.

Title 42 U.S.C. § 1988 provides that in a federal civil rights action "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." *See* 42 U.S.C. §1988(b). In *Jimenez v. Wood County, Tex.*, 621 F.3d 372 (5th Cir. 2010), we restated the basic procedure and standard for determining attorney's fees:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The court must provide a reasonably specific explanation for all aspects of a fee determination. We review the award for abuse of discretion.

621 F.3d at 379-80 (internal citations and quotation marks omitted). According to *Johnson*, the following factors are to be considered when setting a reasonable award of attorney's fees: (1) time and labor required; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or the circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11)

No. 10-51236

nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-19.

In his motion for attorney's fees, Smith seeks approximately $100,000. According to Smith, Bill Gammon billed seventy-three hours at a rate of $400 per hour and David Roger, Gammon's associate, billed 252 hours at a rate of $250 per hour.  Smith then applies a multiplier of 1.2 to each of his attorneys' fees based on the Court of Appeals for the Ninth Circuit's approval of a 2.0 multiplier.[11]  Thus, Smith requested attorneys' fees of $88,512.  In addition, Smith claims that Rogers spent $192.00 in process service costs, $2,361.10 in deposition costs, $1,718.80 in photocopying and printing costs, $4,475 as payment for paralegal research and document drafting, and $1,182.50 as payment for legal secretary case management.  Thus, Smith claims a total of $98,441.40 in attorney's fees and costs.

However, based on the district court's calculation, Smith was awarded attorney's fees and costs in an amount significantly less than that requested. The district court determined:

> Having considered all of the *Johnson* factors, the evidence provided by Smith's counsel, and the arguments and objections of the parties, the district court awarded Smith $2,500 in attorney's fees and costs.  This sum appropriately reflects Smith's very limited success, while still recognizing the useful time spent by counsel, the minor controversy involved in the case, and the importance of civil rights litigation.

---

[11] In *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996), the Ninth Circuit affirmed a district court's determination that a 2.0 multiplier to the lodestar figure applied because of "the extreme undesirability of the case, the likelihood that no other attorney on island would have accepted the case, and the rare and exceptional nature of the case, particularly in the small island community of Guam" and "[s]uch an enhancement is clearly necessary to a reasonable fee where the district court finds that the case is of the type that attorneys are unwilling to take for fear of ostracization and out of concern for their personal safety."  100 F.3d at 697.  Neither Smith's motion for attorney's fees nor his brief to this court provide reasons as to why we should adopt the approach of the Ninth Circuit in applying their 2.0 enhancement theory.

No. 10-51236

Here, Smith claims that the district court erred in awarding $2,500 in attorney's fees and costs because the *Johnson* factors support a more substantial award. Smith notes that while a district court has the discretion to reduce the fee award based on the plaintiff's lack of success, a reduction of approximately 97.5% is excessive.

"Where a decision awarding attorneys' fees is adequately supported by the record and the district court has explained its reasons for the award, there is no abuse of discretion." *Freiler v. Tangipahoa Parish Bd. Of Educ.*, 185 F.3d 337, 348 (5th Cir. 1999) (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 851 (5th Cir.1998)). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citations omitted). Here, Smith received nominal damages of one dollar instead of the approximately $650,000 in actual damages that he sought. Smith's relatively minor success in this case accomplished little beyond giving him "the moral satisfaction of knowing that a federal court concluded that his rights had been violated." *See Hewitt v. Helms*, 482 U.S. 755, 762 (1987).

In this case, the district court "flatly reject[ed]" Smith's claims for fees and awarded Smith $2,500. Citing *Farrar*, the district court reasoned that "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." 506 U.S. at 115. The district court found that Smith's recovery met this description. Nevertheless, the district court considered the "*Johnson* factors, the evidence provided by Smith's counsel, and the arguments and objections of the parties" and determined that Smith should not be denied attorney's fees entirely. Instead, the district court determined that "Smith's very limited success, while still recognizing the useful time spent by counsel,

the minor controversy involved in this case, and the importance of civil rights litigation," entitled Smith to $2,500 in attorney's fees and costs.

While Smith brought multiple claims against the defendants he succeeded on only one of them for which he was  awarded only nominal damages of one dollar.  Based on the record before us, the district court did not abuse its discretion in awarding Smith $2,500 in attorney's fees.

## CONCLUSION

Based on the foregoing analysis, the district court's order granting in-part and denying in-part Smith's motion for summary judgment is AFFIRMED.